UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CLEVELAND ROGERS,

      Petitioner,

                                   CASE NO. 2:11-CV-15485

v.                               JUDGE AVERN COHN

                                   MAGISTRATE JUDGE PAUL J. KOMIVES

RANDALL HAAS,

      Respondent.

_____/


## REPORT AND RECOMMENDATION

*Table of Contents*

I.      RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.     REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . 5
     C.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     D.    *Sufficiency of the Evidence/Trial Court's Findings* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
          1.    *Sufficiency of the Trial Court's Findings* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
          2.    *Sufficiency of the Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
               a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
               b. Resisting or Obstructing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
               c. Attempted Home Invasion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
               d. Attempted Disarming of an Officer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
     E.    *Suppression of Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
          1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
     F.    *Ineffective Assistance of Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
          1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
          2.    *Trial Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
               a. Fingerprints . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
               b. Failure to Investigate/Produce Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . 24
          3.    *Appellate Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
     G.    *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . 28
          1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
     H.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
III.    NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

I.      RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus and should deny petitioner a certificate of appealability.

II.     REPORT:

A.      *Procedural History*

        1.      Petitioner Cleveland Rogers is a state prisoner, currently confined at the G. Robert Cotton Correctional Facility in Jackson, Michigan.

        2.      On September 26, 2006, petitioner was convicted of attempted first degree home invasion, MICH. COMP. LAWS §§ 750.92, .110a(2); attempted unlawful taking of a firearm from a peace officer, MICH. COMP. LAWS §§ 750.92, .479b(2); and resisting or obstructing an officer causing injury, MICH. COMP. LAWS § 750.81d, following a bench trial in the Wayne County Circuit Court. On October 19, 2006, he was sentenced as a third habitual offender, MICH. COMP. LAWS § 769.11, to concurrent terms of 57 months' to 10 years' imprisonment each for the attempted home invasion and attempted unlawful taking convictions, and 2-4 years' imprisonment on the resisting or obstructing conviction.

        3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

        I.      WAS THERE SUFFICIENT EVIDENCE TO CONVICT DEFENDANT OF RESISTING AND OBSTRUCTING A POLICE OFFICER WHERE THE ONLY WITNESS TO TESTIFY WAS THE POLICE OFFICER, AND THAT SAME OFFICER WAS INVOLVED WHEN THE OFFICER'S GUN DISCHARGED?

        II.     WAS TRIAL COUNSEL CONSTITUTIONALLY INEFFECTIVE FOR FAILING TO MOVE THE COURT FOR FINGERPRINTS ON THE GUN WHICH OFFICER HARRELL AND DEFENDANT WERE STRUGGLING OVER?

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence.

2

*See People v. Rogers*, No. 274615, 2008 WL 1733720 (Mich. Ct. App. Apr. 15, 2008) (per curiam).

4.      Petitioner sought leave to appeal these issues to the Michigan Supreme Court.  The

Supreme Court denied petitioner's application for leave to appeal in a standard order.  *See People*

*v. Rogers*, 482 Mich. 898, 753 N.W.2d 168 (2008).

5.      Petitioner subsequently filed a motion for relief from judgment in the trial court

pursuant to MICH. CT. R. 6.500-.508, raising the following claims:

I.      THE TRIAL COURT ABUSED IN ITS FINDINGS THAT ARE INACCURATE ASSUMPTIONS CONCERNING EVIDENCE NOT IN THE RECORD, TO DENY THE DEFENDANT THE RIGHT TO CROSS-EXAMINATION.

II.     THE TRIAL COURT MADE INADEQUATE FINDINGS OF THE REQUISITE INTENT ELEMENT OF HOME INVASION AS M.C.L.A. REQUIRES AND THE CONVICTION MUST BE REVERSED.

III.    A CONTINUOUS PATTERN DOES NOT ARISE FROM MULTIPLE CRIMES OCCURRING IN A[N] INSTANT OFFENSE [WITH RESPECT TO THE SCORING OF OFFENSE VARIABLE 13]. DEFENDANT MUST BE RESENTENCED.

IV.     DEFENDANT MUST BE RESENTENCED USING ACCURATE INFORMATION CONCERNING PRIOR HIGH SEVERITY CONVICTIONS.

V.      DEFENDANT'S CONVICTIONS MUST BE REVERSED WHERE TRIAL COUNSEL'S FAILURE TO CONFER WITH THE DEFENDANT, TO INVESTIGATE TO PRODUCE MITIGATING EVIDENCE, AND WITNESSES ON THE DEFENDANT'S BEHALF, TO LESSEN THE IMPACT OF SPECULATIVE EVIDENCE AND TESTIMONY PRESENTED BY THE PROSECUTION.  INEFFECTIVE ASSISTANCE OF COUNSEL.

VI.     APPELLATE COUNSEL FAILED TO CONFER WITH THE DEFENDANT TO DISCUSS APPEAL ISSUES, INFORM DEFENDANT OF HIS PROPRIA PERSONA RIGHTS AND ABANDONED DEFENDANT'S APPEAL ISSUES BY NOT ATTENDING ORAL ARGUMENT TO COMPLETE THE INCOMPLETE APPELLATE BRIEF FILED.  INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL.

VII.    THE COUNT[Y'S] PROBATION DEPARTMENT DID NOT MAKE THE APPROPRIATE CHANGES TO THE P.S.I., AS ORDERED BY THE TRIAL COURT ON 10-19-06.   AND THE DEPARTMENT OF CORRECTIONS IS USING THE INACCURATE INFORMATION AGAINST THE DEFENDANT, AND M.D.O.C. REFUSES TO MAKE THE CORRECTIONS THAT ARE DOCUMENTED IN THE SENTENCING TRANSCRIPT.   EVEN WITH THE DEFENDANT SHOWING THEM THE CORRECTED INFORMATION, WITH HIS TRANSCRIPT. DEFENDANT MUST HAVE THE ERROR CORRECTED.

VIII.   THERE WAS INSUFFICIENT EVIDENCE TO CONVICT DEFENDANT OF ATTEMPT DISARMING A POLICE, ATTEMPT HOME INVASION AND RESISTING/OBSTRUCTING WHERE THE ONLY EVIDENCE OFFERED WAS THE TESTIMONY OF A POLICE OFFICER WHO HAD SHOT A[N] UNARMED FLEEING SUSPECT.

IX.     THE PROSECUTION FAILED TO DISCLOSE FAVORABLE MATERIAL EVIDENCE THAT HAD BEARING ON THE PROSECUTION'S KEY WITNESS['S] TESTIMONY.

On April 2, 2009, the trial court denied petitioner's motion for relief from judgment, concluding that petitioner's first and eighth claims had already been decided against him on direct appeal, that petitioner has failed to show good cause for his failure to raise his second claim on direct appeal, and that petitioner's remaining claims were without merit.  *See People v. Rogers*, No. 01-4411 (Wayne County, Mich., Cir. Ct. Apr. 2, 2009).  The Michigan Court of Appeals and Michigan Supreme Court denied petitioner's applications for leave to appeal in standard orders.  *See People v. Rogers*, 490 Mich. 872, 803 N.W.2d 330 (2011); *People v. Rogers*, No. 298070 (Mich. Ct. App. Jan. 5, 2011).  Petitioner subsequently attempted to supplement his motion with an additional claim that the arrest warrant was unconstitutionally issued and his arrest illegal.  The trial court denied petitioner's motion to supplement.

6.      Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on December 15, 2011.  As grounds for the writ of habeas corpus, he raises the two claims that he

raised on direct appeal, as well as the first, second, fifth, sixth, and ninth claims raised in his motion for relief from judgment. In his brief, he also raises the additional sufficiency of the evidence claim raised as his eighth claim in his motion for relief from judgment, separated into two separate claims.

7.    Respondent filed his answer on June 12, 2012. He contends that petitioner's claims alleging inadequate findings by the trial court and suppression of evidence are barred by petitioner's procedural default in the state courts, and that all of petitioner's claims are without merit.

8.    Petitioner filed a reply to respondent's answer on June 28, 2012.

B.    *Factual Background Underlying Petitioner's Conviction*

Petitioner's conviction arises from an attempted home invasion in the City of Detroit. The victim homeowner testified that she witnessed petitioner attempting to break into her home through a window, after first ringing the door bell. Officers Schmelter and Harrell, responding to the call, saw petitioner in the area. Officer Harrell yelled for petitioner to "stop," and he ran away. Officer Harrell pursued petitioner, and the two struggled. Petitioner grabbed Harrell's gun, which she had drawn, and as they struggled for the gun it discharged, hitting petitioner in the leg. Upon his arrest, petitioner was discovered to be carrying burglary tools.

C.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect

to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409. As the Supreme Court has explained, the standard for relief under § 2254(d) "is difficult to meet, [and] that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). As the Court explained, "[s]ection

6

2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)). Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412). The relevant "clearly established law" is the law that existed at the time of the last state court decision to issue a reasoned decision on the claim, *see Greene v. Fisher*, 132 S. Ct. 38, 44-45 (2011), and in evaluating the reasonableness of that decision a federal habeas court is limited to the record that was before the state court at the time of its decision, *see Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99 (2011).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not

require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.    *Sufficiency of the Evidence/Trial Court's Findings*

Petitioner first challenges the sufficiency of both the evidence to support his convictions and the trial court's findings. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.    *Sufficiency of the Trial Court's Findings*

To the extent petitioner contends that the trial court's findings of fact were not sufficiently detailed under the requirements of MICH. CT. R. 6.403, he is not entitled to relief because the claim raises an issue of state law not cognizable on habeas review. As the Supreme Court has explained, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)). Petitioner has cited, and I have located, no cases suggesting that specific findings of fact are required in a bench trial as a matter of federal constitutional law. On the contrary, the Sixth Circuit has explained that "[a] state cannot be said to have federal due process obligations to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable." *Levine v. Torvik*, 986

8

F.2d 1506, 1516 (6th Cir. 1993). Thus, "[t]he denial of state-created procedural rights is not cognizable on habeas corpus review unless there is a deprivation of a substantive right protected by the Constitution." *Bonin v. Calderon*, 59 F.3d 815, 842 (9th Cir. 1995). The state court's failure to make detailed findings of fact did not deprive petitioner of a "substantive right protected by the Constitution." Thus, petitioner's conviction does not offend due process even if the trial court failed to issue findings of fact sufficient to satisfy the Michigan Court Rules. *See Witt v. Prelesnik*, No. 92-2354, 1993 WL 473696, at *1 (6th Cir. Nov. 15, 1993); *Tate v. Booker*, No. 06-CV-13156, 2008 WL 2245425, at *5 (E.D. Mich. May 30, 2008) (Cleland, J.).

2.      *Sufficiency of the Evidence*

a.  *Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution. "[I]t is the responsibility of the [factfinder]–not the [reviewing] court–to decide what conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, ___, 132 S. Ct. 2, 4 (2011) (per curiam). The *Jackson* standard "leaves [factfinders] broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that [the

factfinder] 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012) (per curiam) (quoting *Jackson*, 443 U.S. at 319). Likewise, a reviewing court "do[es] not make credibility determinations in evaluating the sufficiency of the evidence." *United State v. Owusu*, 199 F.3d 329, 344 (6th Cir. 2000); *see also*, *United States v. Bailey*, 444 U.S. 394, 424-25 (1980) ("It is for [jurors] and not for appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story."). It is the job of the factfinder, not this Court sitting on habeas review, to resolve conflicts in the evidence, and this Court must presume that the jury resolved those conflicts in favor of the prosecution. *See Jackson*, 443 U.S. at 326. As the Court has explained, "the only question under *Jackson* is whether [the finding] was so insupportable as to fall below the threshold of bare rationality." *Coleman*, 132 S. Ct. at 2065. Under the amended version of § 2254(d)(1) a federal habeas court's review is "twice-deferential." *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012) (per curiam). A state court's decision that the evidence satisfied the deferential *Jackson* standard is itself "entitled to considerable deference under AEDPA." *Coleman*, 132 S. Ct. at 2065; *see also*, *Cavazos*, 132 S. Ct. at 4.

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, "under *Jackson*, federal courts must look to state law for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman*, 132 S. Ct. at 2064 (citation omitted) (quoting *Jackson*,

10

443 U.S. at 324 n.16).  Petitioner contends that the prosecution failed to present sufficient evidence with respect to each of the crimes for which he was convicted.[1]

### b. Resisting or Obstructing

Petitioner first contends that there was insufficient evidence to establish his guilt on the resisting or obstructing causing injury charge.  As explained by the Michigan Court of Appeals, the elements of this crime are: "(1) the defendant assaults, batters, wounds, resists, obstructs, opposes, or endangers a person, (2) the defendant knows or has reason to know that person is performing his or her duties, and (3) the defendant causes bodily injury requiring medical attention or medical care." *Rogers*, 2008 WL 1733720, at *1 (citing MICH. COMP. LAWS § 750.81d(2)).  The Michigan Court of Appeals concluded that the prosecution presented sufficient evidence to prove each of these elements beyond a reasonable doubt.  First, Harrell testified that petitioner struck her in the face twice, and Officer Shea testified that evidence at the scene confirmed that a struggle had occurred.  This testimony provided "sufficient evidence from which a rational trier of fact could have concluded beyond a reasonable doubt that defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered Officer Harrell."  *Id*.  Second, Harrell testified that she was wearing her police uniform and that she yelled, "Police; stop," providing sufficient evidence to conclude that petitioner knew that she was performing her official duties.  *Id*.  Further, there was evidence that Harrell received medical attention after being struck, satisfying the final element of the crime.  *See id*.  The court of appeals rejected petitioner's argument that the evidence was

---

[1]Petitioner's challenge to the resisting or obstructing conviction was decided on the merits by the Michigan Court of Appeals on petitioner's direct appeal, and thus the court's resolution of that claim is entitled to deference under § 2254(d)(1).  Petitioner's challenges to the other two convictions were raised in his motion for relief from judgment.  The trial court did not consider these claims on the merits concluding, incorrectly, that they had already been decided by the court of appeals.  Thus, these two challenges are considered under the *Jackson* standard without the added deference of § 2254(d)(1).

insufficient because Harrell had an incentive to fabricate her testimony based on the fact that defendant was shot in the leg by her gun, explaining that any questions of credibility were for the trier of fact to resolve. *See id*. The Court should conclude that this determination was reasonable.

Here, Harrell's testimony alone, if believed by the trial judge, provided sufficient evidence to prove petitioner's guilt beyond a reasonable doubt. Harrell testified that she identified herself as a police officer, that petitioner struck her twice in the face, and that she received medical treatment. *See* Waiver Trial Tr., at 41, 43, 51, 56. Officer Thomas corroborated that after the incident Harrell's eye was red and swollen. *See id*. at 100, 106. This testimony was sufficient to establish each element of the offense. Petitioner's argument that the evidence was insufficient because it consisted entirely of the testimony of a witness who had a motive to lie is without merit. As explained above, witness credibility is solely the province of the trier of fact. A reviewing court may reverse a trier of fact's credibility determinations only where the testimony is incredible as a matter of law, "such as where it was physically impossible for the witness to observe that which he claims occurred, or impossible under the laws of nature for the occurrence to have taken place at all." *United States v. Radziszewski*, 474 F.3d 480, 485 (7th Cir. 2007) (internal quotation omitted); *accord United States v. Flores*, 572 F.3d 1254, 1263 (11th Cir. 2009); *United States v. Gadison*, 8 F.3d 186, 190 (5th Cir. 1993). Here, it was not physically impossible for Harrell to have observed what she claimed to have observed, nor was her testimony contrary to the laws of nature. The fact that she may have had a motive to fabricate raises a credibility question to be resolved by the finder of fact, but it does not render her testimony incredible as a matter of law. *See United States v. Alcantar*, 83 F.3d 185, 189 (9th Cir. 1996) ("[T]estimony is not incredible as a matter of law . . . only because the witness may have been impeached . . . by the existence of a motive to provide evidence favorable to the

government.").

In short, as noted above, the *Jackson* standard does not permit "fine-grained factual parsing" of the evidence by a reviewing court, *Coleman*, 132 S. Ct. at 2064, nor does it permit this Court to reweigh the conflicts in the evidence or assess the credibility of the witnesses. The trial court, as the finder of fact, was free to draw any reasonable inferences from the evidence, and to resolve the conflicts in the evidence in favor of the prosecution. In light of Officer Harrell's testimony, corroborated by the testimony of other witnesses, the verdict was not "so insupportable as to fall below the threshold of bare rationality." *Coleman*, 132 S. Ct. at 2065. It follows that the rejection of petitioner's claim by the Michigan Court of Appeals and Michigan Supreme Court was reasonable, and that petitioner therefore is not entitled to habeas relief on this claim.

### c. Attempted Home Invasion

Petitioner next argues that the prosecution presented insufficient evidence that he committed the crime of attempted home invasion. Under Michigan law, "[t]he elements of first-degree home invasion are: (1) the defendant broke into and entered a dwelling without permission, (2) while intending to commit or actually committing a felony, larceny, or assault while entering, exiting, or present within the dwelling, and (3) another person was lawfully present in the dwelling or the defendant was armed with a dangerous weapon." *People v. Johnson*, No. 285172, 2009 WL 2974771, at *1 (Mich. Ct. App. Sept. 17, 2009) (per curiam). Further, "[a]n attempt to commit a crime occurs when the defendant (1) has an intent to do an act or to achieve certain consequences which in law amount to the crime and (2) commits an act in furtherance of that intent which goes beyond mere preparation." *People v. Edwards*, 171 Mich. App. 613, 617, 431 N.W.2d 83, 86 (1988). Thus, to prove petitioner's guilt on this offense the prosecution was required to prove that

13

petitioner attempted to break and enter an occupied dwelling while possessing the intent to commit a felony, larceny, or assault. *Cf. People v. Barlow*, No. 258924, 2006 WL 954153, at *1 (Mich. Ct. App. Apr. 13, 2006) (per curiam).

Here, there was sufficient evidence presented to establish these elements. First, the homeowner's testimony established that petitioner attempted to break into her home while she was inside. She testified that petitioner first rang the doorbell, and when she did not answer the door he looked around and went to the back of the house. He pried open a storm door in the back of the house, and tried to open the door. After she called the police, she heard petitioner open a storm window. *See* Waiver Trial Tr., at 9-14. Further, petitioner's furtive actions and his possession of burglary tools upon his arrest, *see id.* at 86-88, provided circumstantial evidence of his intent to commit a larceny once he gained entry into the house. *See People v. Simmons*, No. 298895, 2011 WL 5870085, at *2 (Mich. Ct. App. Nov. 22, 2011) (per curiam); *People v. Rivers*, No. 197631, 1998 WL 1990459, at *3 (Mich. Ct. App. Aug. 4, 1998) (per curiam). It is well-established under Michigan law that "the felonious intent for a breaking and entering crime may be established by inferences from circumstantial evidence, including the nature, time, and place of the defendant's acts." *Tucker v. Palmer*, 541 F.3d 652, 660 (6th Cir. 2008) (internal quotation omitted); *see also*, *People v. Uhl*, 169 Mich. App. 217, 220, 425 N.W.2d 519, 521 (1988). "Furthermore, because it is difficult to prove a defendant's state of mind, minimal circumstantial evidence is sufficient." *Tucker*, 541 F.3d at 660 (internal quotation omitted).

Petitioner contends that the evidence was insufficient for two reasons. First, he contends that the prosecution did not prove that any part of his body entered the home. However, petitioner was convicted for an attempt, not the completed offense. Thus, the prosecution was not required to prove

that he actually entered the home, only that he attempted to do so.  As explained above, the testimony of the homeowner established that petitioner attempted to enter the home.  Second, he contends that the prosecution did not prove that he attempted to commit a first degree home invasion because he believed the house to be unoccupied.  However, the home invasion statute requires only that the home be occupied; it does not require that the defendant know that the home is occupied at the time he breaks and enters (or attempts to do so).  *See People v. Smith*, No. 230898, 2002 WL 1065665, at *3 (Mich. Ct. App. May 28, 2002) (per curiam), *habeas corpus denied sub nom. Smith v. Jones*, No. 03-10230, 2007 WL 470548, at *7 (E.D. Mich. Feb. 7, 2007) (Lawson, J.).  Because the prosecution presented direct evidence that petitioner attempted to break and enter the home while it was occupied, and circumstantial evidence that he intended to commit a larceny once he gained entry, the verdict was not "so insupportable as to fall below the threshold of bare rationality." *Coleman*, 132 S. Ct. at 2065.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### d.  Attempted Disarming of an Officer

Petitioner also contends that the prosecution presented insufficient evidence to prove that he attempted to disarm an officer.  Officer Harrell testified that petitioner grabbed her gun with both hands and attempted to take it from her, and that they struggled for possession of the gun for about one minute.  *See* Waiver Trial Tr., at 43-44.  This testimony was sufficient to establish that petitioner attempted to take her weapon from her.  Petitioner contends that the evidence was insufficient because the gun was never tested for fingerprints, and thus there was not objective evidence supporting Harrell's testimony.  This argument is without merit.  "Lack of physical evidence does not render the evidence that is presented insufficient." *United States v. Magallanez*, 408 F.3d 672,

15

681 (10th Cir.2005); *see also*, *O'Hara v. Brigano*, 499 F. 3d 492, 500 (6th Cir. 2007) (victim's testimony alone sufficient even though not corroborated by other witnesses or physical evidence); *United States v. Bieghler*, 198 Fed. Appx. 566, 568 (8th Cir. 2006) ("'[F]orensic evidence' is not required for conviction.").

Petitioner also contends that the evidence was insufficient based upon the Court's ruling in his related civil rights action.  In that case, petitioner alleged that Officer Harrell used excessive force in violation of the Fourth Amendment, and that other officers covered up the shooting.  Ruling on the defendant's motion to dismiss, Judge Ludington, adopting the recommendation of Magistrate Judge Binder, denied the motion to dismiss with respect to plaintiff's excessive force claim against Officer Harrell.  The Court concluded that there was a genuine issue of material fact with respect to whether plaintiff attempted to take Officer Harrell's gun from her.  *See Rogers v. Detroit Police Dep't*, 595 F. Supp. 2d 757, 775 (E.D. Mich. 2009).  The Court reached this conclusion because, in her affidavit filed in that case, Officer Harrell did not explicitly claim that petitioner had attempted to take her gun.  *See id.*  This conclusion, however, was not based at all on the testimony at petitioner's trial.  And at petitioner's trial Officer Harrell clearly and unequivocally testified that petitioner attempted to take her gun from her.  The Court's finding of a genuine issue of material fact based on different evidentiary materials does not alter the conclusion that the evidence presented at trial, if believed by the trier of fact, was sufficient to prove petitioner's guilt beyond a reasonable doubt.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.    *Suppression of Evidence*

Petitioner next contends that the prosecution suppressed favorable evidence.  The Court

should conclude that petitioner is not entitled to habeas relief on this claim.

     1.     *Clearly Established Law*

The Due Process Clause requires the state to disclose exculpatory evidence to the defense. *See Brady v. Maryland*, 373 U.S. 83 (1963). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Thus, in order to establish a *Brady* claim, petitioner must show that: (1) evidence was suppressed by the prosecution in that it was not known to petitioner and not available from another source; (2) the evidence was favorable or exculpatory; and (3) the evidence was material to the question of petitioner's guilt. *See Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000); *Luton v. Grandison*, 44 F.3d 626, 628-29 (8th Cir. 1994); *see also*, *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Moore v. Illinois*, 408 U.S. 786, 794-95 (1972). Petitioner bears the burden of establishing each of these three elements. *See Carter*, 218 F.3d at 601.

     2.     *Analysis*

Petitioner contends that the prosecution suppressed three items of evidence: (1) photographs of Officer Harrell; (2) fingerprint evidence; and (3) gunshot residue evidence. The Court should conclude reject petitioner's claim.

With respect to the latter two items of evidence, petitioner does not contend that the police actually tested the gun for fingerprints or performed any gunshot residue tests, or withheld the physical evidence so that he could not do so if he so desired. Rather, he asserts only that the police failed to perform these tests. This does not state a *Brady* claim. It is well established, however, that

17

"*Brady* . . . does not require the government to create exculpatory material that does not exist." *United States v. Sukumolachan*, 610 F.2d 685, 687 (9th Cir. 1980); *see also*, *Richards v. Solem*, 693 F.2d 760,766 (8th Cir. 1982) ("Although the state has a duty to disclose evidence, it does not have a duty to create evidence."). As the Supreme Court has explained, the government in a criminal prosecution "do[es] not have a constitutional duty to perform any particular test." *Arizona v. Youngblood*, 488 U.S. 51, 59 (1988). Thus, petitioner cannot establish a *Brady* violation based on the police officers' failure to perform fingerprint or gunshot residue tests.

With respect to the photograph issue, it is not clear that any such photographs existed. Although Officer Harrell testified that photographs were taken after the incident, *see* Waiver Trial Tr., at 56, there was also testimony that she was shaken and upset at this time, *see id*. at 82, 100, and the evidence technician testified that he did not take any photographs of Officer Harrell, *see id*. at 83. Further, assuming that there were photographs taken, Officer Harrell's testimony disclosed this fact. Because the purpose of *Brady* is to permit a defendant to put all exculpatory information before the jury, "*Brady* generally does not apply to delayed disclosure of exculpatory information, but only to a complete failure to disclose." *United States v. Davis*, 306 F.3d 398, 421 (6th Cir. 2002) (internal quotation omitted). Even where " previously undisclosed evidence is disclosed . . . during trial, no *Brady* violation occurs unless the defendant has been prejudiced by the delay in disclosure." *Norris v. Schotten*, 146 F.3d 314, 334 (6th Cir. 1998) (internal quotation omitted); *accord Davis*, 306 F.3d at 421 ("Delay violates *Brady* only where the delay causes prejudice."); *United States v. Bencs*, 28 F.3d 555, 560-61 (6th Cir. 1994). Here, after Harrell testified that photographs were taken, petitioner's counsel did not seek to obtain the photographs or seek a continuance to do so. Because petitioner had the opportunity to obtain this information, he cannot show that it was

suppressed within the meaning of *Brady*.

In any event, even assuming that such a photograph existed, petitioner has offered no reason to believe that the picture would have been exculpatory and material. As to materiality, its only relevance would have been to the injury element of the resisting charge; it would have had no bearing on the other charges. And petitioner has offered nothing to show that the photograph would have supported his claim that Harrell had not been injured. On the contrary, in his brief in this Court petitioner can offer nothing more than that the photographs "would have either corroborated her testimony or impeached it." Pet'r's Br., at 10. As the Supreme Court has explained, "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109-10 (1976). Thus, as several circuit courts have explained,

> "it unwise to infer the existence of *Brady* material based upon speculation alone. . . . '[U]nless [a] defendant is able to raise at least a colorable claim that the [disputed material] contained evidence favorable to [him] and material to his claim of innocence or to the applicable punishment,'" no *Brady* violation will be established.

*United States v. Williams-Davis*, 90 F.3d 490, 514 (D.C. Cir. 1996) (quoting *United States v. Ramos*, 27 F.3d 65, 71 (3d Cir. 1994) (quoting *United States v. Griffin*, 659 F.2d 932, 939 (9th Cir. 1981))) (alterations in original). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.    *Ineffective Assistance of Counsel*

Finally, petitioner contends that his trial counsel was ineffective for failing to have Officer Harrell's gun tested for fingerprints, and for failing to investigate and produce mitigating evidence. He also contends that his appellate counsel was ineffective for failing to confer with him, inform him of his *in propria persona* rights, and attend oral argument. The Court should conclude that

19

petitioner is not entitled to habeas relief on these claims.

1.     *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818,

833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

With respect to appellate counsel, it is well established that "appellate counsel . . . need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Jones v. Barnes*, 463 U.S. 745 (1983)). Although it is "possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, . . . it is difficult to demonstrate that counsel was incompetent." *Id*. As a general rule, it is "'only when ignored issues are clearly stronger than those presented [that] the presumption of effective assistance of counsel [can] be overcome.'" *Id*. (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). Further, in the appellate counsel context, to demonstrate prejudice petitioner must show a reasonable probability that his claims would have succeeded on appeal. *See id*. at 285-86; *Benning v. Warden*, 345 Fed. Appx. 149, 155-56 (6th Cir. 2009); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review a state court's application of *Strickland*:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id*., at 689, 104 S.Ct. 2052; *see also Bell v. Cone*,

535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S.Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

2.    *Trial Counsel*

Petitioner contends that counsel was ineffective for failing to have Officer Harrell's gun tested for fingerprints, and for failing to investigate and produce mitigating evidence. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

### a.  Fingerprints

Petitioner contends that counsel should have subjected Officer Harrell's gun to fingerprint analysis, because a finding that his prints were not on the gun would have proved that he did not attempt to take the gun from Officer Harrell. The Michigan Court of Appeals rejected this claim, concluding that petitioner could establish neither deficient performance nor prejudice. With respect to counsel's performance, the court noted that counsel "argued throughout the proceedings . . . that defendant did not attempt to take Harrell's gun and that defendant did not resist or obstruct Harrell in the discharge of her duties," pointing out that "Harrell was the only witness to the purported struggle with defendant." *Rogers*, 2008 WL 1733720, at *2. With respect to prejudice, the court

22

reasoned that "even a complete absence of defendant's fingerprints would not have proven that defendant had not struggled for Harrell's gun," and that there was other evidence of a struggle beyond Harrell's testimony, such as testimony that there was physical evidence of a struggle and that Harrell's eye was red and swollen. *Id.* This determination was reasonable.

First, petitioner cannot show that counsel performed deficiently in failing to have the gun tested for fingerprints. Counsel pursued a strategy of attacking Harrell's credibility, suggesting that she shot petitioner because she was afraid and then made up a story about a struggle to cover up the shooting. Counsel pursued this strategy through his cross-examination of the witnesses and through argument. As explained below with respect to prejudice, the absence of petitioner's fingerprints on the gun would have had only a limited, if any, effect on petitioner's defense. Had testing revealed petitioner's fingerprints, however, it would have removed all doubt that he attempted to take Harrell's gun. In these circumstances, it was reasonable for counsel "to avoid the risk that such analysis might serve to inculpate [petitioner.]" *Jones v. Galdis*, No. 8:03CV2687, 2005 WL 1705470, at *14 (M.D. Fla. July 20, 2005); *cf. Satcher v. Pruett*, 126 F.3d 561, 573 (4th Cir. 1997) (counsel's failure to seek independent DNA testing to challenge prosecution's test not deficient performance where there was equal chance that results of test could have helped or harmed petitioner, and testing would have undermined counsel's reasonable defense strategy).

Further, petitioner cannot establish a reasonable probability that, but for counsel's failure to seek fingerprint testing, the result of the proceeding would have been different. Even assuming that a fingerprint test would have revealed that petitioner's fingerprints were not on the gun, this would have done little to advance petitioner's defense. First, the gun was not preserved for fingerprint testing, *see* Waiver Trial Tr., at 95-96, and even if it had been there are myriad reasons why no

23

usable prints may be found on an item of evidence, *see United States v. Burdeau*, 168 F.3d 352, 356-57 (9th Cir. 1999), and it is not uncommon for no usable prints to be found on a gun in particular. "In fact it is extremely common: 'successful development of latent prints on firearms is difficult to achieve. In reality, very few identifiable latent prints are found on firearms, a fact that has been discussed in both literature and the judicial system.'" *United States v. Paladino*, 401 F.3d 471, 478 (7th Cir. 2005) (quoting Clive A. Barnum & Darrell R. Klasey, "Factors Affecting the Recovery of Latent Prints on Firearms," *Prosecutor*, Jan./Feb.1998, p. 32). Thus, even had petitioner's fingerprints not been found on the gun, there is not a reasonably probability that the result of the proceeding would have been different. *Cf. United States v. Hibbler*, 193 Fed. Appx. 445, 450 (6th Cir. 2006) (evidence sufficient to sustain conviction for possession offense where officer testified to seeing defendant possess gun, even though defendant's fingerprints were not found on the gun); *Dilks v. Adams*, CV 07-3397, 2008 WL 2156734, at *1 (C.D. Cal. May 20, 2008) ("[T]he fact that no identifiable fingerprints were found on the gun cannot plausibly be said to establish whether or not petitioner threw the gun from the car."). This is particularly true here, where petitioner's guilt did not depend on him ever having handled Officer Harrell's gun. Petitioner was convicted of attempting to disarm an officer, a charge that could be sustained even if he never successfully obtained the gun or even got his hands on it. For these reasons, petitioner cannot show that he was prejudiced by counsel's failure to have the gun submitted for fingerprint testing. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### b. Failure to Investigate/Produce Evidence

Petitioner also claims that counsel failed to investigate and produce mitigating evidence. Specifically, he contends that counsel should have discovered the photographs taken of Officer

24

Harrell, and should have investigated forensic evidence including gunshot residue testing and the angle of entry of the bullet to his leg. As noted above, "it is petitioner's burden to establish the elements of his ineffective assistance of counsel claim." *Pierce*, 63 F.3d at 833. Thus, "[a] defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). Here, petitioner has failed to demonstrate how this evidence would have affected the outcome of his trial. As noted above, there is some question as to whether Officer Harrell was actually photographed following the incident, and petitioner has offered no reason to believe that, even if she had been, the picture would show that Officer Harrell had not been injured. With respect to gunshot residue testing and the bullet's angle of entry, petitioner does not explain how this information could have helped his defense in any way. There was no question that petitioner was shot; the only question was whether he was accidentally shot during a struggle as claimed by Officer Harrell. Petitioner does not explain how the entry angle or presence (or absence) of gunshot residue would have answered this question. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

      3.     *Appellate Counsel*

Finally, petitioner contends that his appellate counsel was ineffective for failing to meet with him, failing to explain to him his *in propria persona* rights, and failing to attend oral argument. Even assuming that counsel was deficient in these respects, petitioner cannot establish prejudice. With respect to counsel's failure to attend oral argument, counsel had fully briefed the issues on appeal and the court of appeals considered those claims on the merits. Thus, petitioner cannot show that he was prejudiced by counsel's failure to attend oral argument. *See Perrou v. Jones*, No. 06-

14941, 2009 WL 2392871, at *14 (E.D. Mich. Aug. 3, 2009) (Lawson, J.); *Gardner v. Kapture*, 261 F. Supp. 2d 793, 804 (E.D. Mich. 2003) (Steeh, J.); *Vega v. United States*, 261 F. Supp. 2d 175, 177 (E.D.N.Y. 2003). With respect to counsel's alleged failure to confer and to advise petitioner of his *in propria persona* rights, petitioner cannot show a reasonable probability that any claims he or counsel could have raised would have succeeded on appeal. As explained above, each of the claims petitioner raises here are without merit, and petitioner does not identify any additional claims that counsel should have raised. Thus, he cannot establish prejudice. *See Smith v. Mitchell*, 348 F.3d 177, 209 (6th Cir. 2003); *Walls v. Romanowski*, No. 2:06-CV-14203, 2013 WL 210735, at *7 (E.D. Mich. Jan. 18, 2013) (Tarnow, J.).

Petitioner also suggests that he is entitled to a new appeal without having to show prejudice because counsel's claims challenged only the attempted disarming an officer conviction, and did not relate to the other two convictions. in *Penson v. Ohio*, 488 U.S. 75 (1988), the Supreme Court essentially held that the "prejudice" component of *Strickland* is not applicable when an appellate lawyer fails either to file a brief or to seek to withdraw under the standard set forth in *Anders v. California*, 386 U.S. 738 (1967).[2] *Penson*, 488 U.S. at 85-89. In *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the Court explained that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Id*. at 477. Conversely, "a defendant who explicitly tells his attorney *not* to file an appeal plainly cannot later

---

[2]Under *Anders*, if counsel concludes that an appeal would be wholly frivolous, counsel must: (1) so advise the appellate court; (2) request permission to withdraw; and (3) file "a brief referring to anything in the record that might arguably support the appeal." *Anders*, 386 U.S. at 744. A copy must be furnished to the defendant, and the defendant must be afforded an opportunity to raise any points he wishes to raise. *See id*. The appellate court must then examine the record and determine whether the appeal is frivolous, in which case the court may grant counsel's request to withdraw and dismiss the appeal. If the court finds "any of the legal points arguable on the merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal." *Id*.

complain that, by following his instructions, his counsel performed deficiently." *Id*.  In the middle

ground–that is, in cases in which "the defendant has not clearly conveyed his wishes one way or the

other," *id*.–the Court explained that

> the question whether counsel has performed deficiently by not filing a notice of
> appeal is best answered by first asking a separate, but antecedent, question: whether
> counsel in fact consulted with the defendant about an appeal. We employ the term
> "consult" to convey a specific meaning-advising the defendant about the advantages
> and disadvantages of taking an appeal, and making a reasonable effort to discover
> the defendant's wishes. If counsel has consulted with the defendant, the question of
> deficient performance is easily answered: Counsel performs in a professionally
> unreasonable manner only by failing to follow the defendant's express instructions
> with respect to an appeal. If counsel has not consulted with the defendant, the court
> must in turn ask a second, and subsidiary, question: whether counsel's failure to
> consult with the defendant itself constitutes deficient performance.

*Id*. at 478.  The Court further explained that although counsel should ordinarily directly consult a

defendant about an appeal, "we cannot say, as a *constitutional* matter, that in every case counsel's

failure to consult with the defendant about an appeal is necessarily unreasonable, and therefore

deficient." *Id*. at 479.  Rather, the Court held "that counsel has a constitutionally imposed duty to

consult with the defendant about an appeal when there is reason to think either (1) that a rational

defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal),

or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in

appealing." *Id*. at 480.

Petitioner, relying on *Flores-Ortega* and *Anders*, argues that he was essentially denied his

right to appeal the home invasion and resisting arrest convictions.  This argument is without merit.

Petitioner has cited, and I have found, no cases holding that an *Anders* brief is required where

counsel raises claims going only to certain convictions in a case involving multiple convictions

arising from a single transaction.  In such a case, counsel has not failed to appeal nor has he sought

to withdraw from representing petitioner, as contemplated in *Anders*. In the absence of any case suggesting that *Flores-Ortega* or *Anders* is applicable in these circumstances, the trial court's rejection of petitioner's claim was neither contrary to nor an unreasonable application of clearly established federal law under § 2254(d)(1). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.   *Recommendation Regarding Certificate of Appealability*

1.   *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999)

28

(quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable."  *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue."  FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id*., advisory committee note, 2009 amendments.  In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.    *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability.  As explained above, Officer Harrell's testimony alone provided sufficient evidence to sustain each of petitioner's convictions, and thus the resolution of petitioner's sufficiency of the evidence claims is not reasonably debatable.  Because petitioner cannot show that photographs of Officer Harrell

actually existed, or that they would have been material and exculpatory, the resolution of petitioner's *Brady* claim is not reasonably debatable. Finally, for the reasons explained above, the resolution of petitioner's ineffective assistance claims is not reasonably debatable. Accordingly, the Court should deny petitioner a certificate of appealability.

H.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the

opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated:  April 8, 2013                    S/Paul J. Komives_____
                                         Paul J. Komives
                                         United States District Judge

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 8, 2013, by electronic and/or ordinary mail.

                                         S/Shawntel R. Jackson_____
                                         Case Manager